UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:25-cv-10150-AB-MBKx | Date: | March 9, 2026 |
|---|---|---|---|

| Title: | *Farshid Yassian et al. v. Travelers Companies, Inc. et al* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   **[In Chambers] ORDER <u>GRANTING</u> PLAINTIFF'S MOTION FOR REMAND [Dkt. No. 18] AND <u>DENYING</u> DEFENDANT'S MOTION TO DISMISS AS MOOT [Dkt. No. 5]**

Pending before the Court is Plaintiffs Farshid Yassian, Roya Yassian, Ryan Yassian, and Remy Yassian's (collectively, "Plaintiffs") Motion to Remand ("MTR," Dkt. No. 18). Defendant Travelers Companies, Inc., Standard Fire Insurance Company ("Defendant" or "SFIC") filed an Opposition ("Opp'n," 20). Also before the Court is Defendant's Motion to Dismiss (Dkt. No. 5). Plaintiffs filed an Opposition (Dkt. No. 15) and Defendant filed a Reply (Dkt. No. 17). For the reasons stated below, Plaintiff's Motion to Remand is **<u>GRANTED</u>** and Defendant's Motion to Dismiss is **<u>DENIED</u>** as moot.

## I.    BACKGROUND

### A. Factual Background

Plaintiffs Farshid Yassian and Roya Yassian are husband and wife and the owners of a residential property located at 612 North Beverly Drive, Beverly Hills,

California (the "Property"), where they reside with their two sons, Plaintiffs Ryan Yassian and Remy Yassian. FAC ¶¶ 1–4, 14. The Property is a single-family dwelling consisting of approximately 6,015 square feet with six bedrooms and seven bathrooms, and has an alleged fair market value of approximately $14 million. *Id.* ¶ 14. Farshid and Roya Yassian purchased the Property in 1994 and have continuously resided there since that time. *Id.*

Defendant Travelers Companies, Inc. ("TCI") is a Minnesota corporation with its principal place of business in Hartford, Connecticut, and is authorized to conduct insurance business in California. *Id.* ¶ 5. Defendant Standard Fire Insurance Company ("SFIC") is a Connecticut corporation domiciled in Hartford, Connecticut, authorized to do business in California, and is the underwriting insurer for the homeowners insurance policy at issue. *Id.* ¶ 6. Defendant James Patterson is an individual residing in Los Angeles County, California, who served as a claims adjuster assigned to Plaintiffs' insurance claim. *Id.* ¶ 7.

Plaintiffs purchased Travelers Insurance Policy No. 609748160-633-1 (the "Policy") to insure the Property. *Id.* ¶ 15. The Policy provides, among other coverages, replacement cost coverage for the dwelling, extended replacement cost coverage, building code upgrade coverage, coverage for personal property, and coverage for loss of use and additional living expenses ("ALE"). *Id.* ¶¶ 15, 18. The Policy also includes coverage for reasonable repairs, mold remediation, and related testing, as well as a contractual appraisal provision allowing either party to demand appraisal in the event of a dispute regarding the amount of loss. *Id.* ¶¶ 19–20. Plaintiffs allege that they timely paid all premiums due under the Policy and that the Policy was in full force and effect at all relevant times. *Id.* ¶ 15.

On or about January 31, 2023, Plaintiffs discovered water damage to the interior of the Property caused by roof leaks. *Id.* ¶ 21. The alleged water intrusion damaged multiple components of the dwelling, including the roof, entryway, patio doors, bathrooms, skylight, exterior walls, laundry room, dining room, and kitchen. *Id.* Plaintiffs promptly notified Defendants of the loss. *Id.* On September 11, 2023, SFIC acknowledged that Plaintiffs' claim had been opened, and on September 14, 2023, Defendants conducted an onsite inspection of the Property and accepted coverage for the claim. *Id.* ¶¶ 22–23. Defendants authorized and paid for initial emergency mitigation services and directed Plaintiffs to retain Rainbow Restoration as the contractor. *Id.* ¶ 23.

Subsequent environmental testing conducted in September 2023 identified indoor mold contamination in several areas of the Property, and consultants

recommended that portions of the residence remain unoccupied pending remediation and clearance. *Id.* ¶¶ 24–26. Defendants issued an initial estimate of the loss in December 2023 and tendered an initial payment of approximately $20,000. *Id.* ¶ 27. Plaintiffs allege that additional conditions, including the presence of lead paint, required further abatement before repairs could proceed. *Id.* ¶ 28.

In early 2024, Defendants acknowledged that portions of the dwelling were not fit to live in and approved relocation under the Policy's ALE provisions, determining that the monthly rental value of the Property was approximately $65,000. *Id.* ¶ 31. Plaintiffs allege, however, that Defendants failed to provide suitable relocation housing or to pay ALE benefits as required under the Policy. *Id.* Over the following months, Defendants conducted multiple inspections, reassigned adjusters, and continued to evaluate the scope and cost of repairs. ¶¶ 33–34. On April 19, 2024, pursuant to Defendants' request, Plaintiffs cooperated in another inspection of the dwelling conducted by SFIC claim representative, Daniel Viramontes ("Viramontes"), and a new adjuster to the claim. ¶ 34. Following this inspection, Defendants' adjusters assessed the covered loss to exceed $100,000 and assigned the Claim to a third adjuster, Defendant Jimmy Patterson ("Patterson"), to handle the large loss. *Id.*

On May 17, 2024, Patterson sent a letter to Plaintiffs stating that their Claim remained open while Defendants continued to evaluate the damages to the home, and requested an additional onsite inspection of the Property. *Id.* ¶ 35. On June 12, 2024, Plaintiffs participated in the requested inspection, which was attended by Vertex, a vendor retained by Defendants to assess the cause and origin of the water loss. *Id.* ¶ 37. During this inspection, Patterson and Vertex agreed that the cost to repair or replace the damaged property would exceed $100,000. *Id.* ¶ 37.

In July and August 2024, Defendants issued a supplemental estimate valuing Plaintiffs' damages at approximately $23,000, relying in part on an engineering report attributing the loss to long-term maintenance issues. *Id.* ¶¶ 40–41. Plaintiffs allege that the supplemental estimate was based on an incorrect floor plan and substantially undervalued the loss. *Id.* ¶¶ 41–42. Defendants also terminated ALE payments as of July 31, 2024. *Id.* ¶ 46.

On September 12, 2024, Plaintiffs demanded appraisal pursuant to the Policy. *Id.* ¶ 45. Plaintiffs allege that Defendants failed to timely respond to the appraisal demand, refused to select an appraiser, and instead requested additional inspections, documentation, recorded statements, and examinations under oath. *Id.*

¶¶ 45–56. Plaintiffs further allege that Defendants have neither denied the claim nor issued a reservation of rights, but have continued to investigate the loss while failing to pay the full amounts allegedly owed under the Policy. *Id.* ¶¶ 59–60.

As a result of Defendants' handling of the claim and the alleged failure to remediate mold and provide relocation benefits, Plaintiffs were required to continue residing in the Property despite alleged health risks, resulting in medical issues and expenses. *Id.* ¶¶ 57–59. Plaintiffs allege that, nearly two years after the reported loss, Defendants have not fully paid or resolved the claim. *Id.* ¶ 60.

### B. Procedural Background

Plaintiffs filed their FAC asserting nine causes of action arising from Defendants' handling of an insurance claim. *See generally id.* The FAC names Standard Fire Insurance Company, The Travelers Companies, Inc., and James Patterson as defendants, and asserts six causes of action against Patterson, including claims under California Business and Professions Code section 17200, negligence, intentional infliction of emotional distress, personal injury, fraudulent misrepresentation, and violation of California Civil Code section 51 et seq. *See generally id.*

On October 22, 2025, Defendant Standard Fire Insurance Company filed a Notice of Removal, removing this action to federal court on the basis of diversity jurisdiction. Dkt. No. 1 ("Notice of Removal"). The Notice of Removal alleges that Patterson—the only named defendant who is a citizen of California—had not been served at the time of removal and was fraudulently joined for the purpose of defeating diversity. *Id.* Plaintiffs thereafter filed a Motion to Remand.

## II. LEGAL STANDARD

### A. Removal

Federal courts are courts of limited jurisdiction and have subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1441(a), a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. Under 28 U.S.C. § 1332, a district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between

"citizens of different states." Section 1332 requires complete diversity, *i.e.*, that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996).

Section 1441 limits removal to cases where no defendant "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(a)(b)(2). Removal statutes are "strictly construe[d] against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removing party bears the burden of establishing federal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### B. Fraudulent Joinder

A non-diverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The term "fraudulent joinder" is a term of art and does not connote any intent to deceive on the part of plaintiffs or their counsel. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd.*, 710 F.2d 549 (9th Cir. 1983). The relevant inquiry is whether plaintiff has failed to state a cause of action against the non-diverse defendant, and the failure is obvious under settled state law. *Morris*, 236 F.3d at 1067; *McCabe*, 811 F.2d at 1339.

The burden of proving fraudulent joinder is a heavy one. The removing party must prove that there is "no possibility that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of America*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). In this regard, "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009); *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand."). "Merely a 'glimmer of hope' that plaintiff can establish [a] claim is sufficient to preclude application of [the] fraudulent joinder doctrine." *Gonzalez v. J.S. Paluch*

*Co.*, 2013 WL 100210, at *4 (C.D.Cal. Jan.7, 2013) (internal quotations omitted);
*accord Ballestros v. American Standard Ins. Co. of Wisconsin*, 436 F.Supp.2d
1070, 1072 (D. Ariz. 2006) (same) (citing *Mayes v. Rapoport*, 198 F.3d 457, 463-
64 (4th Cir. 1999).

## III.    DISCUSSION

In the Motion to Remand, Plaintiffs argue that this matter should be
remanded because both Plaintiffs and an individual defendant, Patterson, are
citizens of California and thus are not completely diverse as required by 28 U.S.C.
§ 1332.

### A. Whether a Named Resident Has Been Served

The Ninth Circuit follows the Supreme Court's holding in *Pullman Co. v.
Jenkins*, which establishes that whenever federal jurisdiction in a removal case
depends upon complete diversity, "the existence of diversity is determined from
the fact of citizenship of the parties named and not from the fact of service."
*Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969) (citing
*Pullman Co. v. Jenkins*, 305 U.S. 534, 540 (1939) ("the fact that the resident
defendant has not been served with process does not justify removal by the non-
resident defendant")). The court explained that *Pullman* states two rules: first, "a
nonresident defendant cannot remove a 'nonseparable' action if the citizenship of
any codefendant, joined by the plaintiff in good faith, destroys complete diversity,
regardless of service or nonservice upon the codefendant." *Clarence E. Morris,
Inc.*, 412 F.2d at 1176 (citation omitted). District courts within the Ninth Circuit
have consistently applied this principle. *See, e.g., Soo v. United Parcel Serv., Inc.*,
73 F. Supp. 2d 1126, 1128 (N.D. Cal. 1999) ("complete diversity is defeated by
joinder of a nondiverse codefendant even if he or she has not been served"); *Lam
Sing v. Sunrise Senior Mgmt., Inc.*, 2023 WL 3686251, at *3 (N.D. Cal. May 26,
2023).

The Ninth Circuit, however, has not definitively resolved whether §
1441(b)(2)'s language "properly joined and served" permits removal before a
forum defendant is served. To be sure, the statutory framework under 28 U.S.C. §
1441(b)(2) provides that a civil action removable solely on diversity jurisdiction
"may not be removed if any of the parties in interest properly joined and served as
defendants is a citizen of the State in which such action is brought." 28 U.S.C.A. §
1441. Several courts have adopted a plain language interpretation, holding that the
statute unambiguously permits removal before a forum defendant is served. *See,*

*e.g., Dechow v. Gilead Sciences, Inc.*, 358 F. Supp. 3d 1051, 1054 (C.D. Cal. 2019); Kornfield v. Kia America, Inc., Case No. 8:23-cv-01796, 2023 WL 8456111, *2 (C.D. Cal. Dec. 6, 2023); *Villasenor v. Quadient, Inc., et al*, Case No. 8:25-cv-00300, 2025 WL 958378 (C.D. Cal. Mar. 28, 2025). In *Dechow*, the court relied on the Ninth Circuit's interpretation of identical language in Section 1446(b)(2)(A) in *Baiul v. NBC Sports* concluding that "properly joined and served" operates as a procedural requirement that must be met before the statutory bar applies. *Dechow*, 358 F. Supp. 3d at 1055–56 (citing *Baiul v. NBC Sports*, 732 F. App'x 529, 531 (9th Cir. 2018)).

However, other Ninth Circuit district courts have rejected "snap removal" before any defendant is served, finding it inconsistent with the statute's purpose. In *Deutsche Bank National Trust Co. v. Old Republic Title Insurance Group, Inc.*, the court concluded that snap removal is impermissible because even if the language of § 1441(b) unambiguously permitted snap removal, "the result would be absurd because such a reading would contravene Congressional intent by contravening the purpose of the forum defendant rule and promoting the very type of forum-shopping gamesmanship the statute was amended to prevent." *Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-1 v. Old Republic Title Ins. Grp., Inc. ("Deutsche")*, 532 F. Supp. 3d 1004, 1011 (D. Nev. 2021). The court based its reasoning on its conclusion that the history and purpose of § 1441(b)(2) did not support the defendants' interpretation. *Id.* at 1013–14 ("Many courts have noted that legislative history does not clearly reveal the purpose of this language, but the historical context suggests Congress added this language in response to the Supreme Court's unwillingness to act on fraudulent joinder."). Moreover, the court found a literal reading of § 1441(b)(2) that permits snap removal would be absurd. *Id.* at 1015–18 ("[T]he Court considers that permitting snap removal runs counter to the expressly limited nature of diversity jurisdiction, courts' presumption against removal, public policy considerations surrounding plaintiff's choice of forum, and Congress' rejection of gamesmanship when originally enacting § 1441(b)(2).").

Similarly, in *Burnett v. Tufguy Products, Inc.*, the court reasoned that permitting removal based solely on service timing "would often deprive a plaintiff of his vertical choice of forum" and that "the rule in Section 1441(b) is about the potential for citizenship bias in state court, not the timing of service." *Burnett v. Tufguy Prods., Inc.*, No. 208CV01335RCJRJJ, 2010 WL 11578884, at *3 (D. Nev. Feb. 10, 2010). There, the court reasoned that permitting removal based solely on service timing "would often deprive a plaintiff of his vertical choice of forum" and that "the rule in Section 1441(b) is about the potential for citizenship bias in state court, not the timing of service." *Id.* The court further opined that § 1441(b)(2) did

not permit removal because "the 'properly joined and served' language of the statute only excuses the presence of fraudulently joined forum defendants, not the presence of properly joined forum defendants who have simply not yet been served at the time of removal." *Id.* Indeed, the only recognized exception to the rule that unserved nondiverse defendants defeat diversity jurisdiction is fraudulent joinder. "Joinder of a nondiverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Davidson v. Arch Chemicals Specialty Prods., Inc.*, 347 F. Supp. 2d 938, 942 (D. Or. 2004).

Defendant argues that removal before a forum defendant is served, otherwise known as "snap removal," is permissible. Opp'n at 3–6. Having considered both approaches of courts in this Circuit, this Court adopts the line of authority holding that removal based solely on the timing of service is inconsistent with the structure and purpose of the forum defendant rule. Interpreting § 1441(b)(2) to allow removal whenever a forum defendant has not yet been served would elevate form over substance, undermine the presumption against removal, and permit gamesmanship unrelated to the existence of true diversity. *See Burnett*, 2010 WL 11578884, at *3; *Deutsche*, 532 F. Supp. 3d at 1011. Accordingly, the Court concludes that Defendant may not rely on the absence of service to establish diversity jurisdiction in this case. The only remaining basis for disregarding the citizenship of the forum defendant is fraudulent joinder, which the Court addresses next.

## B. Fraudulent Joinder

"In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). However, courts apply both a "strong presumption against removal jurisdiction," *Gaus*, 980 F.2d at 566, and a "general presumption against fraudulent joinder," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (citation omitted). Accordingly, "[a] defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' " of proving fraudulent joinder by "clear and convincing evidence." *Grancare*, 889 F.3d at 548.

Plaintiff alleges six claims against non-diverse defendant Patterson: (1) the fourth count, for violation of California Business & Professions Code Section 17200; (2) the fifth count, for negligence; (3) the sixth count, for intentional infliction of emotional distress; (4) the seventh count, for personal injury (general negligence); (5) the eighth count, for fraudulent misrepresentation; and (6) the ninth count, for Violation of Civil Code §51(a) and (b), the Unruh Act. Defendant argues that Patterson cannot be held liable for acts within the scope of his employment with SDIC, and therefore, the "FAC fails to state a viable claim against Patterson." Opp'n at 6.

Under *Bock v. Hansen*, 225 Cal. App. 4th 215 (2014), an insurance adjuster like Patterson can be personally liable for a misrepresentation claim where the adjuster either: (1) provides false information that poses a risk of and results in physical harm to person or property; or (2) conveys the misrepresented information in a commercial setting for a business purpose. *Bock*, 225 Cal. App. 4th at 229. Here, Plaintiff alleges that Patterson made a misrepresentation for a business purpose. Defendant argues that *Bock* was limited to circumstances where the insured suffered physical injury—which did not occur here—but this is too narrow a reading of *Bock.* Indeed, several judges in this Court and others have rejected Defendant's argument and read *Bock* as recognizing the business-purpose basis for such a claim without requiring physical injury. *See, e.g., Livshetz v. Federal Ins. Co.*, 2020 WL 4748461 at *3-*5 (C.D. Cal. Aug. 17, 2020); *Knight–Calabasas LLC v. Liberty Mutual Holding Company, Inc.*, 2017 WL 7661483 at *2-*3 (C.D. Cal. April 5, 2017); *Nido v. Nationwide Mut. Ins. Co.*, 2020 WL 1865324, at *5-*6 (N.D. Cal. April 14, 2020). This Court concurs in this reading of *Bock*. At a minimum, given *Bock*'s apparent recognition of a business-purpose basis for this claim, the Court cannot say that the failure of the claim against Patterson is "obvious according to the settled rules of the state." *McCabe*, 811 F.2d at 1339.

Given *Bock*, and consistent with the weight of federal cases applying it, Defendant cannot show that, under the settled rules of California, there is "no possibility that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good*, 5 F. Supp. 2d at 807. Defendant also raises Rule 12(b)(6) challenges to six of Plaintiff's claims, but because the Court finds Patterson is not a sham defendant under *Bock*, it need not analyze each of these arguments in detail. Accordingly, the Court concludes that Patterson is not a sham defendant so his citizenship must be considered. Because both Plaintiffs and Patterson are California citizens, there is not complete diversity so the Court lacks diversity jurisdiction over this case and it must be remanded.

CV-90 (12/02)                    **CIVIL MINUTES – GENERAL**                    Initials of Deputy Clerk <u>EVC</u>

## IV.    CONCLUSION

For the reasons set forth above, the Motion to Remand is **GRANTED**. The Court **REMANDS** this action to the Los Angeles County Superior Court. Further, Defendant's Motion to Dismiss is **DENIED** as **MOOT**. The Clerk of Court is respectfully directed to close this matter.

**IT IS SO ORDERED**.